IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| BALDINO'S LOCK & KEY SERIVCE, INC., | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 1:14-cv-00636 ) ) |
| GOOGLE, INC., et al., | ) ) ) ) |
| Defendants. | ) ) ) |

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on Defendants Google, Inc. ("Google"), hibu Inc. (formerly Yellowbook Inc. and hereinafter "Yellowbook"), and Ziplocal, LP's ("Ziplocal," collectively "Defendants") Motions to Dismiss the Second Amended Complaint ("Complaint").

Google is a corporation organized under the laws of Delaware and based in California. Google operates the world's most prominent Internet search engine, in addition to providing numerous other—mostly Internet-oriented—services. The search engine is available to the public and allows users to access information on third-party websites by creating a search query on Google's website. One component of the search engine is

Google Maps, which allows users to view satellite imagery and street maps and compiles information on businesses displayed across the map. On both the standard search engine and Google Maps, users will see paid advertising content related to the user's query. The information displayed on Google, both standard query results and paid advertising material, is created by the third-party content providers and generally not by Google itself.

Yellowbook is a corporation organized under the laws of Delaware and based in the United Kingdom.  Ziplocal is a limited partnership organized under the laws of Delaware and based in Utah.  Yellowbook and Ziplocal's service and websites are very similar. According to Plaintiff's Complaint, Yellowbook and Ziplocal are "provider[s] of print and online directory advertising." More specifically, their websites provide an online search engine designed to allow users to find businesses and people by querying certain information, such as type of service and geographic area. Yellowbook and Ziplocal allow businesses to advertise on relevant queries.

Plaintiff Baldino's Lock & Key Service, Inc. ("Baldino's" or "Plaintiff") is a locksmith and security company, operating in Maryland, Virginia, and Washington, D.C.  Over many decades, Baldino's has built, and currently operates, a reputable locksmith service throughout the Baltimore-Washington

metropolitan area, with the required locksmithing licenses in Maryland and Virginia.[1] With the creation of the Internet, Baldino's saw a drastic decrease in revenue, which it attributes to the ability of unlicensed and illegal locksmiths to advertise of the Internet. According to the Complaint, at one point in 2014, a search of Google's directory produced results for over 1,000 locksmiths in Virginia, when only 325 were listed as licensed. A similar infiltration of unlicensed locksmiths was seen on Google for Maryland locksmiths, as well as on Yellowbook and Ziplocal's directories for both states. Frustrated that the illusive unlicensed locksmiths could not be pursued, Plaintiff turned its attention to the Internet directories that allow the incorrect information on their websites and facilitate the unlicensed locksmiths' advertising. Plaintiff has brought suit against the Defendants, as well as 25 unknown, unlicensed Virginia locksmiths. Count I of Plaintiff's Complaint alleges a civil violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1964(c); Count II alleges investment of proceeds of racketeering activity in violation of RICO, 18 U.S.C. § 1962(a) and (d); and Count III alleges false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

---

[1] A license is required in Maryland and Virginia to provide locksmith services. VA Code Sec. Va. Code Ann. § 9.1-139; Md. Code Ann., Bus. Reg. § 12.5-201.

A complaint will be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss, the Court will "accept the facts alleged in the [C]omplaint as true and construe them in the light most favorable to the plaintiff." Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). In order to avoid dismissal, the Complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A satisfactory complaint will "state a plausible claim for relief that permits the court to infer more than the mere possibility of misconduct." Coleman, 626 F.3d at 190 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)).

Defendants are immune under Section 230 of the Communications Decency Act ("CDA"). That section states, in relevant part, that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The plain language of the statute creates a federal immunity to any cause of action that would make an interactive computer service liable for content

originating with a third-party information content provider.[2] Zeran v. Am. Online, Inc., 129 F.3d 327, 330 (4th Cir. 1997). "Congress thus established a general rule that providers of interactive computer services are liable only for speech that is properly attributable to them." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 254 (4th Cir. 2009).

Interactive computer services include websites that do not generate original content but rather allow users to access the website in order to post information. Nemet, 591 F.3d at 252, 255 (finding the defendant to be an interactive computer service for operating "a website that allows consumers to comment on the quality of businesses, goods, and services"); see also Directory Assistants, Inc. v. Supermedia, LLC, 884 F. Supp. 2d 446, 451 (E.D. Va. 2012) (finding several websites to be interactive computer services for not creating the content that is posted but allowing people access to a portal to post information concerning products and services). The immunity extends to all information posted that does not originate with the defendant as

---

[2] The statute defines the term "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(f)(2). The statute defines the term "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3).

an information content provider. Nemet, 591 F.3d at 254. A publishing website is immune under the CDA even when given notice that it has published false information. Zeran, 129 F.3d at 333. "Although [editorial discretion] might be feasible for the traditional print publisher, the sheer number of postings on interactive computer services would create an impossible burden in the Internet context." Id.

Defendants are interactive computer services. While each operates their own website, and each provides limited original content, the content at issue here is created by third-parties—the advertising locksmiths—and not by Defendants. By providing a platform for third-party users to publish information, Defendants have allowed locksmiths access to a portal to post information and the speech is not properly attributable to them. Absent an exception, Defendants are immune under Section 230 as the publishing website, despite their knowledge of the false information.

The CDA provides three exceptions from immunity, none of which apply in this case. First, the CDA does not apply if the content violates the Electronic Communications Privacy Act of 1986 or any similar state law. Plaintiff has not argued that this exception applies. Second, the CDA does not apply if the content violates federal criminal law. This exception does not apply because the federal crimes Plaintiff has alleged, mail and

wire fraud and violation of RICO, have not been adequately pled, as discussed below. Finally, the CDA does not apply if the content violates intellectual property law. This exception does not apply because Plaintiff has not adequately pled a violation of the Lanham Act, as discussed below.

Because each Defendant is an interactive computer service rather than an information content provider, and because none of the exceptions to immunity apply, Defendants are entitled to immunity under Section 230 of CDA and the Complaint is dismissed in its entirety.[3]

Further, Plaintiff has failed in several respects to adequately plead a RICO violation. First, Plaintiff has failed to show that it has standing under RICO to bring this action. The RICO statute provides a private cause of action for any person whose business or property is injured by reason of a RICO violation. 18 U.S.C. § 1964(c). However, as in all cases, a plaintiff must have standing to bring a cause of action. Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009). The United States Court of Appeals for the Fourth Circuit has held that "detrimental reliance by the victim . . . is necessary to

---

[3] A finding of immunity under Section 230 is appropriate grounds for dismissal under Rule 12(b)(6). Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 254-55 (4th Cir. 2009) (holding that Section 230 immunity would be "effectively lost" if immunity is not considered "at the earliest possible stage of the case").

establish injury to business or property 'by reason of' a predicate act of mail fraud within the meaning of § 1964(c)." Brandenburg v. Seidel, 859 F.2d 1179, 1188 n.10 (4th Cir. 1988) *overruled on other grounds by* Quackenbush v. Allstate Ins. Co., 517 U.S. 706 (1996); see also Choimbol v. Fairfield Resorts, Inc., 428 F.Supp.2d 437, 444 (E.D.Va. 2006) (holding that, to have standing, "(1) the plaintiff must have detrimentally relied on the predicate acts of racketeering activity; (2) the predicate acts must be the proximate cause of the injury to the plaintiff; and (3) the plaintiff must suffer actual injury"). Without detrimental reliance on the RICO activity, a party lacks RICO standing and may not bring suit under §1964(c).

Here, Plaintiff has not, and cannot, allege detrimental reliance. The thrust of Baldino's evidence against Defendants is its showing of locksmith results that greatly exceed the lists of named, licensed locksmiths in Virginia and Maryland. Rather than having relied on the false listings, Baldino's purports to know precisely who is, and who is not, a licensed locksmith. Detrimental reliance by Baldino's, as opposed to an unaware consumer, is a logical impossibility. Therefore, Plaintiff does not have standing to bring this suit.

Second, Plaintiff has failed to adequately plead the elements required under the RICO statutes. Count I, the RICO

action, is brought under § 1964(c) as a civil enforcement of violations of §§ 1962(c) and (d).[4] Count II, investment of proceeds of racketeering activity, is brought under § 1964(c) as a civil enforcement of violations of §§ 1962(a) and (d).[5] Each of these subsections requires a showing of an enterprise, an underlying act of racketeering, as well as a pattern of racketeering activity. <u>United States v. Love</u>, 767 F.2d 1052, 1061 n.13 (4th Cir. 1985) ("The gist of a RICO offense is that the defendant furthered a racketeering enterprise through a pattern of racketeering activity."). Plaintiff has failed to plead these three common elements in Counts I and II.

Plaintiff has failed to adequately plead the existence of an enterprise. The statute broadly defines an enterprise as "any individual, partnership, corporation, association, or other

---

[4] § 1962(c) states:
> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). § 1962(d) criminalizes conspiring to violate § 1962(a), (b), or (c). 18 U.S.C. § 1962(d).

[5] § 1962(a) states in relevant part:
> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in . . . interstate or foreign commerce.

18 U.S.C. § 1962(a).

legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The existence of an enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit" with a common purpose. United States v. Turkette, 452 U.S. 576, 583 (1981); Boyle, 556 U.S. at 945.

Plaintiff's Complaint states that Defendants "each constitute an enterprise" and "[e]ach enterprise is an ongoing organization. Each enterprise has an ascertainable structure and purpose beyond the scope of Defendants' predicate acts and their conspiracy to commit such acts" and the "advertising sections of each of the three named Defendants . . . contain both the enterprise and the persons who are conducting these racketeering activities." These conclusory assertions with no factual support are simply insufficient to satisfy the Turkette standard of enterprise. See Migdal v. Rowe Price-Fleming Int'l, Inc., 248 F.3d 321, 328 (4th Cir. 2001) (holding that "Rule 12(b)(6) requires more than the mere recitation of boilerplate statutory language"). Further, pleading an associated-in-fact enterprise, as Plaintiff has done, requires certain information regarding the enterprise's structure: the enterprise's "purpose, relationships among the associates, and longevity sufficient to permit the associates to pursue the enterprise's

purpose." Boyle, 556 U.S. at 939. The latter two pieces of information required of an associated-in-fact enterprise are simply not pled. As for the first, Plaintiff states that the purpose of these enterprises are "to maximize sales of advertising for Defendants Google, Yellowbook, and Ziplocal by utilizing the listings of unlicensed and illegal locksmith services" and to "use listings of unlicensed and illegal locksmith services to increase their advertising revenue from honest businesses." While Plaintiff has stated a purpose for the associated-in-fact enterprise, that purpose lacks factual support to make the theory more than speculative. Without such evidence, the Court is unconvinced Defendants would pollute their directories with inaccurate information and sacrifice their reputations for the sake of raising more advertising revenue.

A RICO claim must allege an underlying predicate act of racketeering, which are enumerated by statute. 18 U.S.C. § 1961(1). Plaintiff alleges mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343, each of which constitute racketeering activity. Id. The federal mail and wire fraud statutes prohibit the use of the mails or interstate wires in furtherance of a scheme to defraud. 18 U.S.C. §§ 1341, 1343. To plead mail or wire fraud, a plaintiff must show: (1) a scheme disclosing intent to defraud; and (2)

the use, respectively, of the mails or interstate wires in furtherance of the scheme. See Chisolm v. TranSouth Fin. Corp., 95 F.3d 331, 336 (4th Cir.1996). The Federal Rules of Civil Procedure further require that fraud be pled with particularity as to the time, place and contents of the false representations, as well as the identity of the person making those representations and the object sought by the fraud. Fed. R. Civ. P. 9(b); Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure: Civil § 1297, at 590 (2d ed. 1990)); Menasco, Inc. v. Wasserman, 886 F.2d 681, 684 (4th Cir. 1989). While the Court, for purposes of a motion to dismiss, accepts all facts alleged in the complaint as true, the Court is not bound to accept "a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986); see also Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) (holding that the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences"). In order to survive a motion to dismiss, "the complaint must contain facts sufficient to raise a right to relief above the speculative level and state a claim to relief that is plausible on its face." Caper Corp. v. Wells Fargo Bank, N.A., 578 F.

App'x 276, 279-80 (4th Cir. 2014) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007) (internal quotations omitted).

The allegations of mail and wire fraud set forth in the Complaint are not pled with the particularity required under Rule 9(b). Plaintiff's Complaint states that Defendants' fraudulent communications consist of "the statements on the website that are being published purporting to show licensed locksmiths in the state of Virginia and Maryland." These false statements have been published continuously, every day since 2008, and Defendants "know that their websites contain numerous illegal advertisements." According to Plaintiff, Defendants "knew exactly what they were doing" and "specifically intend[ed] to use their false ads to gain additional advertising revenue." Although, Plaintiff has made a boilerplate recitation of the elements of the claim, it has not provided any evidentiary support of Defendants' intent to perpetrate a fraudulent scheme. The allegation is simply speculative, an unwarranted deduction of fact. Therefore the Complaint is dismissed as to Counts I and II.

Because the Complaint fails to adequately plead a predicate act of racketeering, Plaintiff has necessarily failed to plead a pattern of racketeering activity. Under the RICO statutes, it must be shown that the defendant not only committed a predicate

act, but engaged in a pattern of racketeering activity, which the statute defines as at least two acts of racketeering activity within ten years of each other. 18 U.S.C. § 1961(5). Because the Court has held that the allegations of mail and wire fraud are insufficient predicate acts, Plaintiff has failed to plead two or more predicate acts constituting a pattern of racketeering activity. See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 235 (4th Cir. 2004) (holding that an insufficient pleading of mail and wire fraud prevents the pleading of a pattern of racketeering activity).

Finally, Count III of the Complaint fails to state a violation of § 43(a)(1)(B) of the Lanham Act. That section creates a private cause of action for the use in commerce of any false or misleading description of fact in commercial advertising of goods and services that "misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). In order to adequately plead such a claim, a plaintiff must show that

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is

likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

PBM Products, LLC v. Mead Johnson & Co., 639 F.3d 111, 120 (4th Cir. 2011) (quoting Scotts Co. v. United Indus., 315 F.3d 264, 272 (4th Cir. 2002)).

Plaintiff's claim fails to show the first required element, that Defendants made a false or misleading description of fact or representation of fact. Rather, the unlicensed and illegal locksmiths are the advertisers that made representations that appeared on Defendants' websites. To hold Defendants liable for misinformation appearing on their websites, which originated with third parties, is a drastic conclusion the Court declines to endorse. The Court believes the market incentive for Defendants to provide correct information to consumers is a better tool for accuracy than the Lanham Act.

For the aforementioned reasons, this Court finds that Defendants' Motions to Dismiss should be granted. An appropriate order shall issue.

/s/ Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
January 27, 2015